IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CAROLYN SCOTT                                                                                    PLAINTIFF

v.                              Civil No. 11-2021

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Carolyn Scott, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on April 16, 2008, alleging an onset date of April 25, 2004, due to plaintiff's seizure disorder, obesity, mental retardation, adjustment disorder, and dependent personality disorder.  Plaintiff's applications were denied initially and on reconsideration.  She then requested an administrative hearing, which was held on June 2, 2009.  Tr. 19-77.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 37 years of age and possessed a high school education.  Tr. 10, 55-56.  She had past relevant work ("PRW") experience as a housekeeper, dining room attendant, and appliance assembler.  Tr. 27-33.

On December 21, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's seizure disorder controlled via medication, obesity, and mild retardation did not meet or equal any Appendix 1 listing. Tr. 88-90. She found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she could not drive; could not climb scaffolds, ladders, or ropes; could not work at unprotected heights or with dangerous equipment or machinery; and, could perform only non-complex simple instruction, involving routine and repetitive tasks, requiring little judgment, concrete, direct, and specific supervision, and involving only superficial contact with the public and co-workers. Tr. 90-93. With the assistance of a vocational expert, she then determined Plaintiff could still perform her PRW as an appliance assembler, as she previously performed it, and housekeeper both as she previously performed it and as it is generally performed. Tr. 93-94.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 24, 2010. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 9, 10.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    **A.**    <u>**The Evaluation Process**</u>:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

The listed impairment for mental retardation under 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05, provides: "Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of the impairment before age 22.  20 C.F.R. pt. 404, subpt. P, app.1, § 12.05.  To meet the required level of severity for mental retardation, the claimant must also satisfy the requirements in A, B, C, D, E, or F of the listing. *Id*.

Plaintiff contends that she satisfied the requirements of section C, which requires, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* § 12.05C; *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006) (holding that the requirements in the introductory paragraph are mandatory).  The record makes clear that Plaintiff had a full scale IQ of only 65, qualifying her for a diagnosis of mental retardation.  There also appears to be no question that this impairment manifested itself before Plaintiff attained the age of 22, as is evidenced by her poor grades in school and her placement in special education classes.

Although determining that Plaintiff's seizure disorder and obesity constituted severe impairments, the ALJ concluded that neither impairment was sufficient to meet section C's requirements. Tr. 89. Specifically, she found that the limitations imposed by Plaintiff's seizure disorder were merely safety considerations and did not impose a significant work-related limitation of function. The undersigned is troubled by this conclusion.

To be considered severe, an impairment or combination of impairments must significantly limit an individual's physical or mental abilities to do basic work activities. *See* SSR 85-28. In *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006), it was determined that the Plaintiff's personality disorder, defined by the ALJ as "severe," met the requirement of an additional significant work-related limitation of function, as required under the section 12.05(C) analysis. *Id*. at 901.

The ALJ did note that Plaintiff's seizure disorder was controlled via medication, however, she concluded that it constituted a severe impairment. And, by definition, this means it significantly limited Plaintiff's physical or mental ability to do basic work activities.[1] The ALJ also concluded that Plaintiff's seizure disorder prevented her from driving, climbing scaffolds, ladders, or ropes; and working at unprotected heights or with dangerous equipment or machinery. It seems clear to the undersigned that the ALJ concluded that Plaintiff's seizure disorder imposed an additional and significant limitation on her ability to function in the workplace. Accordingly,

---

[1] We note that impairments are generally not considered severe when they are stabilized by treatment. *See Johnston v. Apfel,* 210 F.3d 870, 875 (8th Cir. 2000); *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000) (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). However, the ALJ specifically found Plaintiff's seizure disorder to be severe. Therefore, we believe the proper analysis should have been conducted.

we believe remand is necessary to allow the ALJ to re-evaluate whether Plaintiff's combination of impairments met the requirement for listing 12.05C.

We also note that Dr. Patricia Walz conducted a psychological evaluation of Plaintiff on July 7, 2009. Tr. 363-372. She diagnosed Plaintiff with adjustment disorder with mixed emotional features; mild mental retardation; and dependent personality disorder. Dr. Walz also assessed her with a global assessment of functioning ("GAF") score of 40-45. Tr. 367. Further, she completed an RFC assessment, and concluded that Plaintiff would be markedly or extremely limited in several areas of functioning, including the ability to sustain an ordinary routine without special supervision and to make simple work-related decisions. Tr. 369-372.

The ALJ dismissed Dr. Walz's assessment, although based upon an evaluation and the administration of psychological tests, stating there was no objective evidence in the record to support her diagnoses. The ALJ contends that Dr. Walz diagnosed Plaintiff with dependent personality disorder merely because Plaintiff was dependent on her husband as the primary bread winner. However, she failed to consider the additional evidence in the record suggesting Plaintiff's dependence, including the fact that Plaintiff had never obtained a drivers license, had only one friend, had no social life, did not attend church because she did not like attending alone, depended on her husband to help her remember to take her medication, tended to become very emotional when corrected or criticized, was afraid to go out after dark, and was childlike in her presentation. Dr. Walz also noted that Plaintiff's communication and interaction skills were somewhat childlike, and that she had a great deal of difficulty managing money. Similarly, Dr. Keith Norwood found Plaintiff to be both childlike and immature, determined that she would not be able to manage funds without assistance, and found significant impairments in her

communication, social skills, and academic skills. Tr. 309. As such, we believe remand is necessary to allow the ALJ to reconsider Dr. Walz's assessment.

The ALJ also failed to consider Dr. Walz's diagnosis of adjustment disorder, stating simply that Plaintiff's complaints were situational. While we do note that Plaintiff reported a great deal of tension and bickering between she and her husband, we do not believe this disqualifies her diagnosis in any way. In fact, adjustment disorder is defined as a maladaptive reaction to an identifiable stressful life event(s) or stressor(s), such as divorce, illness, or family crises. *See* DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS IV-TEXT REVISION 683 (4th ed. 1994). Thus, by definition, the impairment is situational. Therefore, the sole issue before the ALJ was whether this impairment significantly limited Plaintiff's physical or mental abilities to do basic work activities.

Accordingly, on remand, the ALJ is directed to properly analyze Dr. Walz's evaluation and assessment and to reconsider listing 12.05C, taking into consideration all of Plaintiff's severe impairments. The ALJ is reminded that an "ALJ must not substitute his opinions for those of the physician." *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). Therefore, should the ALJ have any questions regarding Dr. Walz's assessment, Dr. Walz should be recontacted.

IV.   **Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties**

**are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

    DATED this 25th day of October 2011.

            /s/ *J. Marschewski*
            HON. JAMES R. MARSCHEWSKI
            CHIEF UNITED STATES MAGISTRATE JUDGE